No. 55,569

GENE A. MCDANIEL and JOYCE N. MCDANIEL, *Plaintiffs-Appellees/Cross-Appellants*, v. ROBERT C. JONES and DONA JONES, *Defendants-Appellants/Cross-Appellees*, v. UNITED STATES OF AMERICA, *Intervenor-Appellee/Cross-Appellant.*

(679 P.2d 682)

Opinion filed March 24, 1984.

*Rod L. Richardson,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause and was on the briefs for the appellants.

*Lonnie A. Hamilton,* of Olathe, argued the cause, and *Craig W. Huntley,* of Olathe, was with him on the briefs for the appellees.

*Terry L. Fredricks,* of Department of Justice, Tax Division, of Washington, D. C., argued the cause, and *Jim J. Marquez,* United States Attorney, and *Janice M. Karlin,* Assistant United States Attorney, of Topeka, and *Glenn L. Archer, Jr.,* Assistant Attorney General, *Michael L. Paup* and *Wynette J. Hewett,* of Department of Justice, Tax Division, of Washington, D.C., were with him on the brief for the intervenor-appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an action to quiet title to residential property located in Johnson County, Kansas. The district court quieted title in the property in the name of Robert and Dona Jones (defendants), subject to existing mortgages, liens and other encumbrances on the property. These include a judgment lien in favor of Gene and Joyce McDaniel (plaintiffs) and tax liens in favor of the United States of America (intervenor). The court further ordered the property be foreclosed to satisfy these liens. Each of these parties has appealed from parts of the judgment.

The facts involved span a period of over twenty years. In 1959 the defendants purchased a home located at 8900 Delmar in Prairie Village, Kansas, for $61,000. Part of the purchase price was paid in cash and the remainder was financed through two mortgages. Beginning in 1963 the defendants began to encounter financial difficulties. They fell behind in making payments to one of the mortgagees and tax liens were filed against them by the federal government for unpaid income taxes. In August 1963 the mortgagee instituted foreclosure proceedings against the property. The property was foreclosed upon and was sold at a sheriff's sale in November 1963. The defendants were unable to obtain refinancing to redeem the property due to the outstanding tax liens and other financial problems. In early 1964 Mr. Jones sought assistance from Mr. McDaniel, his law partner, in obtaining refinancing for the property. McDaniel was aware of the defendants' financial problems and was concerned about his law partner losing his home. Jones and McDaniel entered into an oral agreement that the property would be conveyed to McDaniel to enable him to secure a loan to redeem the property. Jones and his family would continue to live in the house and pay all expenses for the property for which McDaniel would be liable as record title owner, including the mortgage, insurance and tax payments.

McDaniel subsequently obtained a mortgage on the property of approximately $40,000 from Mission State Bank. McDaniel was the sole obligor on the mortgage. The proceeds of the mortgage were used to redeem the property for the Joneses by paying off the two prior mortgages and the defendants' various tax liabilities secured by liens against the property. Jones paid the fees and costs incurred in obtaining the mortgage. The warranty deed conveying the property from the defendants to

McDaniel and the mortgage held by Mission State Bank were recorded in 1964. In October of that year Mission State Bank assigned the mortgage to Prudential Insurance Company. At that time the president of the bank wrote Jones notifying him that "your loan" was sold to Prudential.

Subsequently the defendants made payments on the mortgage directly to Prudential, and maintained insurance on the property listing Prudential as the loss payee. They also paid for repairs and improvements to the house. In 1965 both McDaniel and Jones submitted financial statements to a bank in connection with attempts to obtain financing for their partnership. Jones listed the residence at 8900 Delmar as an asset with the $40,000 mortgage thereon as a liability. McDaniel did not list the property as an asset nor the mortgage as a liability.

During 1966 Prudential was required to advance funds for the payment of taxes on the property when the defendants were late in making such payments. In early 1967 Prudential declared the mortgage in default and indicated it would commence foreclosure proceedings. McDaniel and Jones attempted to reinstate the mortgage in accordance with the terms of a demand letter sent by Prudential which required payment of the amount then due and execution of an affidavit setting forth the interests of the defendants in the property. A check drawn on the trust account of the Jones and McDaniel law firm for the amount due was returned by Prudential for failure to furnish the requested affidavit. A foreclosure action was filed by Prudential against McDaniel, the defendants and the United States. (Additional tax liens had been filed against the defendants since 1964.) Subsequently, Jones forwarded an affidavit to Prudential's counsel stating "[t]hat he occupies the premises at 8900 Delmar, Prairie Village, Kansas, not under any lease agreement, purchase contract or mortgage assumption agreement, but by virtue of oral agreement between the affiant and Gene A. McDaniel, the owner of the fee interest in said property." This affidavit was rejected by Prudential. McDaniel and Jones later received a letter from Prudential setting forth five specific requirements for reinstatement, including execution of an affidavit prepared by Prudential's counsel. This affidavit states McDaniel is the fee title owner of the real estate and further reads:

"[T]hat affiant [McDaniel] does not live or reside on the real estate above

described, but that Robert C. Jones and Donna Jones, his wife, are in possession thereof as month-to-month tenants of affiant as lessor; that said tenants, Robert C. Jones and Donna Jones, occupy the said real estate under an oral month-to-month lease arrangement with affiant and said tenants, Robert C. Jones and Donna Jones, are in possession of said real estate only under such oral tenancy arrangement and do not occupy said premises under or by virtue of any written lease agreement, trust, purchase contract, option or mortgage assumption agreement and said Robert C. Jones and Donna Jones have no interest whatsoever in said real estate, except as such month-to-month tenants."

This document was executed by McDaniel and Jones in order to comply with the reinstatement requirements and was forwarded to Prudential along with other requested documents and the funds due. The letter from Prudential also directed that all further payments were to be made from McDaniel's individual account and not from the law firm account or a trust account established for McDaniel and Jones. Thereafter the defendants made payments in the amount of the mortgage payments to McDaniel, who in turn made the mortgage payments to Prudential. The defendants continued to pay all expenses incurred for maintenance, taxes and insurance on the property.

Beginning in 1967 and continuing through 1980 when this lawsuit commenced, the plaintiffs reported the money they received from the defendants for the mortgage payments as rental income on their federal income tax returns. In addition, they claimed deductions relating to the property for depreciation, taxes and interest on the mortgage. For six of those years the plaintiffs reported net losses in connection with the property. The remaining years, however, they realized net gains on the rental income received from the defendants, on which they were required to pay income taxes.

Also during this time the Internal Revenue Service apparently became suspicious of the dealings between the plaintiffs and defendants concerning the property and conducted an investigation to determine if it could levy against the property to satisfy the defendants' tax liens. The aforementioned affidavit submitted to Prudential indicating McDaniel was the fee title owner of the property was given to the I.R.S. to preclude it from levying on the property.

At various times prior to 1980 Jones and McDaniel discussed the possibility of reconveying the property to the defendants. In 1972 a deed was purportedly executed by the plaintiffs convey-

ing the property to the defendants. However, this deed was not notarized, dated or recorded. In 1974 another deed was allegedly executed by the plaintiffs conveying the property to Chris and Naomi Jones, the parents of Robert Jones. This deed was notarized by Joyce Jordan, but was not recorded and instead was kept at the defendants' residence. Apparently Chris and Naomi Jones had no knowledge of the conveyance. After this deed was executed the defendants continued to make payments to the plaintiffs for the mortgage on the property.

In August 1979, Robert Jones requested an associate in his law office to prepare a memorandum on the tax consequences of a transfer of the property to a third party or as a gift from the plaintiffs to the defendants. Because of the tax liens pending against him, Jones was interested in the possibility of transferring the property to his son. The associate later drafted a follow-up memorandum for McDaniel concerning the gift tax consequences which would be involved in a transfer of the house from McDaniel to Jones. At about this time the defendants unsuccessfully listed the property for sale with a realtor with an asking price of $225,000. McDaniel did not raise any objections to the proffered sale.

In May 1980, Jones and McDaniel dissolved their partnership. Thereafter, Jones either ceased or was late in making mortgage payments to the plaintiffs. In August, McDaniel demanded that Jones pay him $2,250 per month for rent instead of the $281.20 per month mortgage payments which had been made since 1964. When these payments were not forthcoming the plaintiffs notified the defendants they were terminating their "lease" and instituted a forcible detainer proceeding on October 16, 1980. The defendants offered to immediately pay off the mortgage on the property, which the plaintiffs refused. The defendants then recorded the 1974 deed on October 30, 1980. Shortly thereafter the forcible detainer action was dismissed by the district court and the instant lawsuit was filed.

When this case was presented to the trial court, the plaintiffs maintained they purchased the property from the defendants in 1964 as an investment and, because of the partnership relationship between McDaniel and Jones, it was agreed the defendants would continue to live in the house until their children were grown, at which time the plaintiffs would sell it at fair market

value. They argued the defendants were month-to-month tenants and the affidavit submitted to Prudential by McDaniel and Jones accurately reflected their agreement concerning the property. As their "rent" payment the defendants were required to pay the amount of the mortgage payments ($281.20 per month), plus pay all other expenses incurred for maintenance, insurance and taxes on the property. According to McDaniel's testimony, he was prompted to purchase the property for at least two reasons: (1) he wanted to help his law partner out of a bad situation, and (2) it presented an investment opportunity which would not cost him anything. The plaintiffs denied executing the 1972 and 1974 deeds reconveying the property to the defendants and maintained their signatures thereon were forgeries. The plaintiffs also sought damages from Joyce Jordan and her bonding company, Maryland Casualty, for her notarization of the allged forged signatures.

The defendants, on the other hand, claimed the property was conveyed to McDaniel only to enable them to obtain refinancing for the defendants to allow them to redeem the property from foreclosure. Once the defendants' tax and other financial problems were resolved the property would be reconveyed to the defendants. McDaniel would not lose any money at all on the deal and, because the property was worth substantially more than $40,000 in 1964, he assumed no risk in obtaining the loan. They argued the affidavit submitted to Prudential did not represent their agreement and was signed only because Prudential would not reinstate the loan without it. They further maintained the 1974 deed was in fact executed by the plaintiffs because they no longer wanted the property in their name. The deed was not recorded at that time, however, because the defendants did not think it was necessary due to the amicable business relationship between the parties, and because McDaniel was concerned about the tax consequences of the reconveyance.

After the case was presented to the trial court, but before judgment was rendered, the United States filed a motion to intervene in order to assert the outstanding federal tax liens against any interest which the defendants held in the property. The court granted the motion over the defendants' objections.

Subsequently, an evidentiary hearing was held to allow the United States to present evidence concerning the tax liens.

In a comprehensive memorandum decision filed on December 23, 1982, the trial court dismissed the action against Chris Jones, Naomi Jones, Joyce Jordan and Maryland Casualty Company, for lack of personal jurisdiction. (Chris Jones had died in 1975; the others were not residents of Kansas and had not subjected themselves to jurisdiction here.) The trial court held the conveyance of the property from the defendants to McDaniel in 1964 did not pass fee simple title to the plaintiffs, but was intended to secure an equitable mortgage on the property of $40,000. Accordingly, the defendants remained fee title owners of the property. This interest, however, was subject to a lien in favor of the plaintiffs for money expended since 1980 for mortgage payments, taxes and interest, in addition to an equitable award of a four percent interest charge or "risk factor" on the $40,000 to compensate the plaintiffs for the risks they were subjected to on the loan obtained for the benefit of the defendants. This lien came to a total of approximately $44,500. The defendants' interest in the property was also subject to federal tax liens totaling approximately $233,800. The plaintiffs' judgment lien was held to have priority over the tax liens. The trial court ordered that the property be foreclosed to satisfy these liens and held the foreclosure was not barred by any homestead rights held by the defendants. In addition, the court held the 1974 deed was void because as equitable mortgagees the plaintiffs had no right, title or interest which they could convey, and because no consideration was given for the deed.

The defendants appeal from all rulings adverse to them. The plaintiffs contend the trial court erred in finding they were not the fee simple title owners of the property. The United States appeals the court's ruling subordinating the federal tax liens to the plaintiffs' award.

Initially we must consider a motion filed by the defendants seeking involuntary dismissal of the cross-appeals of both the plaintiffs and the United States on the grounds of acquiescence in the lower court's judgment. After entry of final judgment the plaintiffs filed a motion to obtain an order from the district court directing the sale of the property to satisfy their judgment. At this time no appeals had been perfected. On March 31, 1983, the district court entered an order for the sale of the property. On

April 15, 1983, the court entered an order establishing a viewing schedule for prospective purchasers of the property and the redemption periods for the parties. A similar order extending the time for viewing the property was filed on May 26, 1983. Meanwhile, the parties had all filed notices of appeal and had docketed their appeals with the Clerk of the Appellate Courts.

On May 18, 1983, the defendants filed an application with this court for a stay of the proceedings to enforce the judgment without a supersedeas bond. A memorandum of law opposing this motion was filed by the United States. The defendants' motion was denied on June 3, 1983. Subsequently steps were taken by the United States and the plaintiffs to enforce the order of sale. The property was sold at a sheriff's sale on July 28, 1983, to a third party for $85,000. Part of the proceeds from the sale was used to pay court costs, publication expenses and outstanding taxes. Various motions were filed by the defendants requesting that the trial court deny confirmation of the sale and that the proceeds from the sale be impounded pending the outcome of the appeal. The United States filed a memorandum of law opposing the defendants' motion. The sale was confirmed by the district court on November 4, 1983. Thereafter the defendants redeemed the property by tendering the purchase price plus other expenses which were found to be owing. These funds were impounded by the district court pending the outcome of the appeal.

The defendants contend both the plaintiffs and the United States, by virtue of their actions resulting in the foreclosure and sale of the property, have voluntarily complied with the trial court's judgment, thereby losing their right to appeal. The rules on acquiescence in a judgment were summarized in *Brown v. Combined Ins. Co. of America,* 226 Kan. 223, Syl. ¶¶ 6, 7, 8, 597 P.2d 1080 (1979):

"The general rule, subject to certain exceptions, is that a party to litigation who has acquiesced in the judgment of the trial court either by assuming the burden of such judgment or by accepting the benefits thereof will be deemed to have acquiesced in such judgment and may not thereafter adopt an inconsistent position and appeal from such judgment."

"Where a judgment or decree involves distinct and severable matters, demands or issues, an acceptance of the burdens or benefits of one or more parts thereof will not prevent an appeal as to the remaining contested matters, demands or issues."

"When a party to an appeal has paid or otherwise assumed the burden of any

portion of a judgment rendered against such party, including the payment of costs, such party will not be deemed to have acquiesced in the judgment so long as the issues on appeal cannot affect the payments made or burdens assumed and such payment or burden is not involved in the issues on appeal. Likewise, any party to an appeal who accepts such payment shall not be deemed to have acquiesced in the judgment so long as the issues on appeal do not affect the obligation for the payment of or the right to receive such portion of the judgment."

See also *Halpin v. Frankenberger,* 231 Kan. 344, 348, 644 P.2d 452 (1982); *Garden City Country Club v. Commercial Turf Irrig., Inc.,* 230 Kan. 272, 274-75, 634 P.2d 1067 (1981); *City of Topeka v. Stauffer Communications, Inc.,* 7 Kan. App. 2d 353, 354-55, 642 P.2d 120 (1982). The gist of acquiescence sufficient to cut off a right to appeal is voluntary compliance with the judgment. *Haberer v. Newman,* 219 Kan. 562, 566, 549 P.2d 975 (1976).

The plaintiffs have appealed from the trial court's decision finding the defendants were fee title owners of the property and granting the plaintiffs an equitable mortgage on the property. They contend the trial court should have quieted fee title to the property in them. However, after the trial court's final judgment was entered and while this appeal was pending before the appellate courts, the plaintiffs and the United States vigorously pursued the remedy of foreclosure granted to them by the trial court in order to satisfy their judgments. The proceeds from the sale were not sufficient to satisfy both judgments.

Although this court is reluctant to deny litigants their right to a review of questions on the merits, nevertheless, it is impossible to find reasons why the plaintiffs have not acquiesced in the judgment by their actions. In seeking and obtaining execution of the judgment by causing the property to be foreclosed and sold, the plaintiffs have impliedly recognized the validity of the trial court's judgment granting them an equitable mortgage on the premises and the right to foreclose to satisfy the mortgage.

In 4 Am. Jur. 2d, Appeal and Error § 264, it is stated:

"The right to appeal or bring error may. be waived by pursuing another, inconsistent remedy. There is considerable authority that a party against whom an adverse judgment has been rendered and who, pending an appeal therefrom, prosecutes another action based on the same cause and involving the same parties and issues, will be held to have waived or abandoned his right to appeal."

See also 4 C.J.S., Appeal and Error § 222. In 4 C.J.S., Appeal and Error § 220 the rule is recognized that a party who enforces his judgment waives his right to appeal:

"A party who enforces payment or satisfaction of a judgment or decree in his favor, by suing out execution or otherwise, generally waives his right to bring or prosecute an appeal or writ of error, although the execution was ordered under a misapprehension, for which appellee was not responsible. Under this general rule a right of appeal is waived, even though appellant claims that the judgment is for less than he was entitled to recover, unless there is a statutory provision to the contrary. . . .

"However, the right to appeal or bring error is not waived where the judgment or decree is of such a character, or the circumstances are such, that there is no inconsistency between such enforcement and the appeal or proceeding in error . . . ."

More specifically relating to the instant case, 4 C.J.S., Appeal and Error § 221 states:

"A mortgagee cannot appeal from a judgment or decree of foreclosure, after judgment or decree has been satisfied, by his causing a sale to be made of the mortgaged premises thereunder. In such a case the mortgagee waives his right to appeal from that part of the decree which gives judgment for a less sum than is claimed to be due . . . ."

By their actions the plaintiffs have clearly accepted the benefit of the court's judgment and therefore must be deemed to have acquiesced in such judgment, unless it can be said there is no inconsistency between the execution of the judgment and the issues raised by the plaintiffs on appeal, or the issue raised will not affect the obligation for payment or the right to receive such portion of the judgment. Neither is true in the instant case. The foreclosure and sale of the property to satisfy the equitable mortgage awarded by the trial court to the plaintiffs is absolutely inconsistent with the plaintiffs' contention that the court erred in failing to find they were fee title owners of the property. Under the theories advanced by the parties either the plaintiffs were fee title owners and the defendants were month-to-month tenants, or the defendants were fee title owners and the plaintiffs were entitled to an equitable mortgage on the property. The plaintiffs cannot assert they are entitled to foreclose their equitable mortgage on the property and at the same time on appeal claim they should be declared fee title owners. The plaintiffs have acquiesced in the trial court's judgment and therefore the issue raised by them on appeal is not subject to review.

However, this is not true with the issue raised on appeal by the United States. It challenges only that portion of the trial court's ruling concerning the order in which the judgment lien and tax liens on the property are to be satisfied from the proceeds of the sale of the property. This issue involves only the respective rights of the United States and the plaintiffs, and is a distinct and severable matter from the foreclosure and sale of the property to satisfy the judgments entered against the defendants. Any determination on this issue will not affect the defendants' obligation for payment of the judgments or the right of the plaintiffs and the United States to foreclose on the property to satisfy their respective judgments. As the foreclosure of the property has no bearing on the issue raised by the United States on appeal, the execution of that portion of the trial court's judgment does not amount to acquiescence by the United States.

In support of their argument that the United States has acquiesced in the judgment the defendants point to the fact that a portion of the proceeds was used to pay court costs and other expenses relating to the foreclosure of the property. However, in *Brown v. Combined Ins. Co. of America,* 226 Kan. at 231, the court expressly overruled prior cases which held the payment of court costs by the appellant is sufficient acquiescence in a judgment to bar judicial review on appeal. The court held the payment of costs in the trial court by the appellant or cross-appellant, when the assessment and amount of such costs would not be affected by the decision on appeal, does not constitute such an acquiescence in the judgment to foreclose appeal.

The plaintiffs assert the defendants have acquiesced in the judgment by redeeming the property after foreclosure. However, it is generally the rule that a waiver is not implied from measures taken by an appellant in defense of and to protect his rights or interest, as where, for such purpose, an execution debtor redeems from a sale on execution. 4 C.J.S., Appeal and Error § 212, p. 620-21.

Having acquiesced in the judgment the issues asserted by the plaintiffs on appeal are of no consequence. Accordingly, in the instant case the trial court's finding that the transfer of the deed to the plaintiffs constituted an equitable mortgage rather than an actual conveyance of title to the property must be accepted as supported by the evidence and stands unassailed.

The defendants first contend the trial court erred in finding the warranty deed executed by the plaintiffs in 1974 conveying the property to Chris and Naomi Jones was void for lack of consideration. This argument, however, misstates the trial court's ruling. After briefly stating the relevant facts pertaining to this issue and finding there was insufficient evidence to rule on the plaintiffs' claim the deed was a fraud or forgery, the trial court held:

"In addition, having determined that the transaction of May 22, 1964, was an equitable mortgage, the Court has little problem disposing of the 1974 deed between the plaintiffs and the parents of the defendants. A person can convey no interest greater than that he owns. The 1974 deed purported to convey right, title and interest in the property at 8900 Delmar. Since the plaintiffs owned none of the right, title or interest the deed is completely void, because it passes nothing. Perhaps equally as compelling of this conclusion of the Court rests in the fact there was absolutely no consideration exchanged and the purported conveyance must be found invalid."

The gist of this ruling is the conveyance of fee title to Chris and Naomi Jones was void because the plaintiffs, as equitable mortgagees, held no interest in the property which they could convey by warranty deed to the elder Joneses. The court cites the lack of consideration only as an additional factor in support of its conclusion. The defendants, of course, are in agreement with the trial court's ruling that the plaintiffs held only an equitable mortgage on the property.

It has long been established that a grantee can acquire no greater title or interest in land conveyed to him by warranty deed than his grantor had. See, *e.g., Ames v. Brooks,* 179 Kan. 590, Syl. ¶ 2, 297 P.2d 195 (1956); *Johnson v. Allen,* 178 Kan. 348, 352, 285 P.2d 764 (1955); *Common School District No. 45 v. Lewis,* 177 Kan. 261, Syl. ¶ 2, 278 P.2d 596 (1955). The statement of law cited by the defendants, that a deed is generally good between parties without consideration in the absence of a wrongful act on the part of the grantees such as fraud or undue influence (see *Briscoe v. Reschke,* 170 Kan. 367, 376, 226 P.2d 255 [1951]), does not have any bearing on the trial court's finding that the equitable mortgagees could not convey fee title to the property. There was no error in the trial court's finding that the 1974 warranty deed purporting to convey fee title to Chris and Naomi Jones was void.

Next the defendants contend it was error for the trial court to allow the post-trial intervention of the United States. On June 14,

1982, after the case had been presented to the trial court, but before judgment was entered, the United States filed its motion to intervene. The United States did not have actual notice of the lawsuit until it learned of the matter through a revenue agent on May 17, 1982. The defendants do not dispute this evidence. However, they vigorously opposed the motion to intervene before the trial court claiming the motion was untimely. The trial court granted the motion to intervene pursuant to K.S.A. 60-224 and directed that the parties file proposed findings of fact and conclusions of law on all the issues, "including the validity of the liens asserted by the United States, and the right to foreclose those liens." The court did not specify whether intervention was allowed under subsection (*a*) of the statute as a matter of right or under subsection (*b*), which allows permissive intervention. A supplementary evidentiary hearing was held on August 31, 1982, to permit the United States to present evidence of the tax liens pending against the defendants.

The requirements for intervention are set forth in K.S.A. 60-224, which reads:

"(a) *Intervention of right.* Upon timely application anyone shall be permitted to intervene in an action: (1) When a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter substantially impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

"(b) *Permissive intervention.* Upon timely application anyone may be permitted to intervene in an action: (1) When a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

The right to intervene under subsection (*a*) depends on the concurrence of three factors: (1) timely application, (2) a substantial interest in the subject matter, and (3) lack of adequate representation of the intervenor's interest. *Hukle v. City of Kansas City,* 212 Kan. 627, 630, 512 P.2d 457 (1973); *American States Ins. Co. v. Hartford Accident & Indemnity Co.,* 218 Kan. 563, 573, 545 P.2d 399 (1976); *Rawlins v. Stanley,* 207 Kan. 564, 567, 486 P.2d 840 (1971). The provisions of 60-224(*a*) are to be liberally construed, and to avoid intervention the opposing party has the burden of showing the applicant's interest is adequately

represented by the existing parties. *Campbell American Legion v. Wade*, 210 Kan. 537, Syl. ¶¶ 1, 2, 502 P.2d 773 (1972). See also *Hukle v. City of Kansas City*, 212 Kan. at 632. Whether a motion to intervene is allowed is a matter of judicial discretion. *American States Ins. Co. v. Hartford Accident & Indemnity Co.*, 218 Kan. at 573.

The defendants claim the motion to intervene was not timely filed for four reasons: (1) the United States has had knowledge of the plaintiffs' and defendants' conflicting interests in the property since 1967 by virtue of being named as a party defendant in the foreclosure action by Prudential; (2) the United States had constructive notice of the present lawsuit since December 31, 1980, by virtue of the lawsuit being a matter of public record; (3) the United States did not file a motion to intervene until four weeks after receiving actual knowledge of the lawsuit; and (4) the motion was not filed until after the case had been tried before the trial court.

The first two of these reasons need only be addressed briefly. In *Rawlins v. Stanley*, 207 Kan. 564, Syl. ¶ 2, the court made it clear that *actual notice* of the pendency of any action is required before an interested party must take steps to intervene. In that case the court held a letter from plaintiff's counsel to the intervenor stating he *intended* to file the lawsuit was not sufficient notice of the action to require the intervenor to take steps to intervene. Here the United States did not have actual notice until May 17, 1982. Moreover, although the United States had notice as early as 1967 that the Joneses occupied the premises and possibly had an equitable interest in the property, the defendants had subsequently indicated to the United States that they retained no interest in the property other than as month-to-month tenants by supplying the I.R.S. with the Prudential affidavit to this effect. The defendants are hardly in a position at this time to assert that the United States was on notice of the defendants' potential interest in the property when the instant lawsuit was filed.

With regard to the third and fourth reasons advanced by the defendants, it cannot be said the motion to intervene was not timely because it was filed almost a month after actual notice was received or because it was filed after the case was tried. Upon receiving actual notice of the dispute over the property the

United States obtained a copy of the trial transcript to ascertain the nature of the lawsuit and claims asserted by the parties, sought authorization to intervene, and then prepared its motion and supporting memorandum of law. The United States wasted little, if any, time in asserting its right to intervene once it had knowledge of the lawsuit. This court has approved of intervention after the case has been tried and final judgment entered where adequate representation of the intervenor's interest no longer existed for purposes of appeal. *Hukle v. City of Kansas City*, 212 Kan. at 632; *Moyer v. Board of County Commissioners*, 197 Kan. 23, 27, 415 P.2d 261 (1966). See also Annot., 37 A.L.R.2d 1306 § 9 (recognizing some jurisdictions permit intervention at any time prior to determination of the issues), and § 11 (discussing cases which have not allowed intervention once trial has begun). Sufficient reasons do not appear for holding the trial court should have disallowed intervention merely because the case had been tried before the district court. A judgment had not yet been rendered in the action. Every opportunity existed for the plaintiffs and defendants to request that the court reopen the case to present evidence rebutting the claims asserted by the United States. The cases cited by the appellant which have denied intervention where a motion was not filed until after the action was tried are from other jurisdictions and involve situations where the applicant had actual notice of the pendency of the action for a significant length of time prior to filing a motion to intervene. Under the circumstances of this case the motion to intervene was timely filed.

The remaining two factors which must exist to establish the right to intervene, a substantial interest in the lawsuit and lack of adequate representation, were also present here. The United States had a substantial interest in the ownership of the property, which was the crux of the lawsuit. Substantial tax liens had been filed over the years against the defendants which remained unsatisfied. Under 26 U.S.C. § 6321 (1976) federal tax liens attach to all property and right to property held by a taxpayer. Ownership of the property by the Joneses was the cornerstone of the United States' claim that it was entitled to enforce its tax liens by foreclosure. It is equally clear the other parties did not adequately represent the interests of the United States in this matter. The United States sought to prove the defendants were

fee title owners of the property which was contrary to the position asserted by the plaintiffs. The United States and the plaintiffs were also at odds on the issue of the priority of the equitable mortgage over the federal tax liens. On the other hand, the position taken by the United States conflicted with the defendants' claim that the 1974 deed conveyed the property to the elder Joneses. As pointed out in *Campbell American Legion v. Wade,* 210 Kan. 537, Syl. ¶ 3, the interests of the existing parties and the party seeking intervention need not be wholly adverse before there is a basis for concluding that existing representation of a different interest may be inadequate. Here the defendants have not carried their burden of showing the United States' interest was adequately represented by the existing parties. There is sufficient evidence the United States was entitled to intervene as a matter of right under K.S.A. 60-224(*a*).

In addition, sufficient evidence exists to conclude permissive intervention was proper under 60-224(*b*). That section empowers a court to allow a party to intervene when the applicant had a conditional right to intervene under statute or when the applicant's claim and the main case have a common legal or factual question. Both situations are present in this case. Under 26 U.S.C. § 7424 (1976) the United States is allowed to intervene in any action involving property against which the United States claims a tax lien. Thus, intervention was proper under 60-224(*b*)(1). The United States sought resolution of the same issue as the parties: fee title ownership of the property. The trial court aptly noted if the United States was not allowed to intervene, a second lawsuit concerning substantially the same issues and requiring the same discovery, evidence and testimony would be required. The defendants argue, however, that the United States should have been required to file another action seeking a determination of its rights. They claim in such an action the United States would have been able to protect and preserve its alleged rights and the defendants would have had an opportunity to contest the validity of the United States' liens or the right to foreclose them. This argument holds no persuasive merit where compelling reasons cannot be advanced for requiring the duplication of lawsuits when the interests of the parties can be resolved in an existing lawsuit and intervention does not result in any prejudice to the parties. The defendants were provided

with an adequate opportunity by the trial court to contest the validity of these liens and to present defenses to foreclosure. Permissive intervention was also proper under 60-224(*b*)(2).

In conclusion it cannot be said the trial court abused its discretion by granting the United States' motion to intervene either as a matter of right under K.S.A. 60-224(*a*) or permissively under 60-224(*b*).

In a related issue the defendants contend the post-trial intervention of the United States deprived them of their procedural due process right to present evidence to the trial court of equitable defenses they possess which would have allowed the trial court to bar foreclosure of the tax liens. The sole equitable defense asserted by the defendants is their homestead interest in the property.

This point is not well taken. The record does not bear out the defendants' claim that they were denied the opportunity to defend their homestead interest against foreclosure of the tax liens. As noted above, when the district court granted the motion to intervene the court specifically instructed the parties to address "the validity of the liens asserted by the United States, and the right to foreclose on those liens" in their proposed findings of fact and conclusions of law. Subsequently the defendants filed proposed findings and conclusions wherein they thoroughly and vigorously argued that their homestead interests in the property should bar foreclosure of the tax liens. Neither at the supplemental evidentiary hearing held after the United States intervened nor at any time thereafter did the defendants indicate they desired an opportunity to present additional evidence to support their homestead defense. In a lengthy motion to amend the judgment the defendants once again asserted intervention was improper and challenged the court's ruling that the homestead interest did not bar foreclosure. However, they did not allege they had been denied an opportunity to present evidence of their homestead interest and did not request an opportunity to do so at that time.

It is obvious the defendants were provided with the opportunity to and did in fact argue the merits of their homestead interest in the property. Accordingly, the defendants' claim that intervention by the United States deprived them of their due process rights to present evidence of equitable defenses to foreclosure is without merit.

The arguments presented to the trial court concerning the defendants' homestead interest in the property are virtually identical to those advanced here. The defendants assert that under *United States v. Hershberger*, 475 F.2d 677 (10th Cir. 1973), and *United States v. Rogers*, 649 F.2d 1117 (5th Cir. 1981), the district court had discretion to determine whether the defendants' homestead property should be protected from foreclosure. On this issue the trial court held:

"Defendants have raised the defense of homestead rights particularly on behalf of Dona Jones. The Court in noting the arguments of the United States in its reply brief, filed September 15, 1982, in substance finds that a husband and wife may file joint federal income tax returns. 26 U.S.C. § 6013(a). If husband and wife file a joint return, they are jointly and severally liable for the tax for that year. *O'Dell v. United States*, 326 F.2d 451, 456 (10th Cir. 1964). Where a joint return has been filed, and judgment on the tax liability has been entered against both husband and wife, they are precluded from contending that they are not jointly liable for the tax assessed. *United States v. Maxwell*, 459 F.2d 22, 23 (5th Cir. 1972). Defendants filed joint returns. Assessments were made against them jointly and judgment was entered against them jointly. They therefore are jointly and severally liable for the tax. Thus the tax lien attached to all property owned by them, whether jointly or separately. This lien is enforceable against both of their property interests. *United States v. Mitchell*, 403 U.S. 190, 205 (1971).

"Defendants contend that under *United States v. Hershberger*, 475 F.2d 677 (10th Cir. 1973), the Jones' house is a Kansas homestead against which a federal tax lien cannot be enforced. This contention is not well taken. In *Hershberger* the Court dealt with whether the Kansas homestead statute created merely an exemption, or whether it created a present property interest in the wife. The Court found that a property interest in the wife was created. Since the tax assessment was only against her husband, the tax lien did not attach to her homestead interest. Therefore, her homestead interest 'cannot be subjected to levy and sale for the satisfaction of the federal tax liability of her husband.' *Hershberger*, 475 F.2d at 682. In expounding upon its earlier decision, the Court in *United States v. Eaves*, 499 F.2d 869 (10th Cir. 1974), noted that in deciding whether to foreclose a tax lien, the trial court sits as a Court of equity. Thus, if a spouse against whom no tax liability is outstanding has a property interest in a home, the Court could hold, within its discretion, that the liens cannot be foreclosed.

"The situation in *Hershberger* is not present here. The tax liability in question is one for which both defendants are liable. Thus, there is no interest in the house to which the tax lien did not attach and against which the tax lien is not enforceable. The Kansas exemption statute does not bar foreclosure of tax lien. *K.S.A. § 60-2301*. Second, for a period of nearly twenty years, the defendants have enjoyed a high standard of living while disregarding their duty to pay the tax owed by them. Finally, as was testified to by both defendants, the reason title to the home remained in plaintiff's name was so that they could avoid paying their

tax liability. To allow the defendants to now shield their assets runs contrary to entering equity with 'clean hands'."

In *United States v. Hershberger*, 475 F.2d 677, the Tenth Circuit Court of Appeals held the Kansas homestead law conferred upon the appellee a vested undivided one-half interest in her homestead property which could not be foreclosed against to satisfy her husband's tax liabilities, which she did not share, for so long as she maintained her homestead interest in the property. Similar decisions were reached by the Fifth Circuit in *United States v. Rogers*, 649 F.2d 1117, and *Ingram v. City of Dallas Dept. of Housing, Etc.*, 649 F.2d 1128 (1981). In a consolidated appeal the United States Supreme Court reversed these last two cases, holding 26 U.S.C. § 7403 (1976) empowers a federal district court to order the sale of a delinquent taxpayer's homestead property, but a taxpayer's spouse who is not liable for the tax indebtedness and has a separate homestead interest in the property is entitled to be compensated for that interest from the proceeds of the sale. *United States v. Rodgers*, _____ U.S. _____, 76 L.Ed.2d 236, 253, 255, 103 S.Ct. 2132 (1983). The Supremacy Clause prevents state homestead laws from barring foreclosure of property held as a homestead by a nondelinquent third party in § 7403 proceedings. 76 L.Ed.2d 258. Moreover, the court recognized that where both spouses have federal tax liability and the federal tax assessment was made against both spouses, the homestead interest of the taxpayers cannot defeat the foreclosure of the federal tax liens. 76 L.Ed.2d at 257, and cases cited therein. See also *United States v. Estes*, 450 F.2d 62 (5th Cir. 1971); *Shambaugh v. Scofield*, 132 F.2d 345 (5th Cir. 1942). The court held, however, that district courts are not absolutely required to order foreclosure in § 7403 proceedings, but may exercise "limited equitable discretion," in determining whether the homestead property should be foreclosed upon, taking into account "both the Government's interest in prompt and certain collection of delinquent taxes and the possibility that innocent third parties will be unduly harmed by that effort." The court was quick to add this caveat:

"To say that district courts need not always go ahead with a forced sale authorized by § 7403 is not to say that they have unbridled discretion. *We can think of virtually no circumstances, for example, in which it would be permissible to refuse to authorize a sale simply to protect the interests of the delinquent taxpayer himself or herself.* And even when the interests of third parties

are involved, we think that a certain fairly limited set of considerations will almost always be paramount." 67 L.Ed.2d at 263. (Emphasis added.)

As the trial court correctly pointed out, the situation involved here is not one where only one of the defendants is liable for the tax indebtedness. Both Robert and Dona Jones are jointly liable for the taxes assessed against them, despite the fact Dona Jones may have had no personal income for the period in question. See 26 U.S.C. § 6013 (1976); *O'Dell v. United States*, 326 F.2d 451, 456 (10th Cir. 1964). The Supreme Court clearly expressed its doubts that this is a situation where it is permissible to refuse to authorize a sale merely to protect the delinquent taxpayers' homestead interests. Nevertheless, it is clear from the last paragraph of the district court's memorandum decision quoted above that the defendants' homestead defense was given due consideration and no equitable circumstances were found to exist which should bar foreclosure. To the contrary, the district court found the defendants had not come into court with "clean hands" and should not now be protected by equity.

The arguments asserted on appeal with regard to this issue were presented before the trial court for consideration. There is no evidence in the record to suggest the trial court abused its discretion in refusing to bar foreclosure by the United States of its tax liens to protect the defendants' homestead interest in the property.

The remaining issues raised by the parties concern the equitable mortgage awarded the plaintiffs by the trial court. A judgment of $44,512.34 was entered against the defendants based upon the following damages which the court found to have been incurred by the plaintiffs:

"(a) Direct payments to Prudential Insurance Company of $8998.40 representing payments of $281.20 from May 1980 (date of defendants' last payment) and December, 1982.

"(b) Real estate taxes, past $5,605.38 and current $1,005.92 or total of $6,611.30.

"(c) Insurance, $3,104.00.

"(d) A recognition of some interest charge for the exposure or risk factor of the $40,000.00 initially obtained for the benefit of Defendants. In the interest of equity, if the Court applies a reasonable 4% risk factor to the 18 years of payments ($60,739.20 most admittedly paid by defendants but still subjecting plaintiff to the risk) one arrives at $86,537.00 less amounts paid gives a resultant of $25,798.64 which the Court feels is a reasonable assessment for the 18 years technical use of plaintiff's money or certainly his credit to initiate the transaction and continuing since May, 1964."

The court held the entire judgment constituted an equitable mortgage on the property which could be foreclosed and which had priority over the federal tax liens.

The defendants first contend the trial court, in determining the plaintiffs' award of damages, improperly considered a "Statement of Expenses" submitted by the plaintiffs after the close of trial. This statement sets forth the mortgage payments, real estate taxes and insurance premiums paid by the plaintiffs on the property since May 1980, when difficulties arose between the plaintiffs and defendants. The defendants promptly filed an objection to the consideration of this statement by the trial court. The defendants contend it was improper for the trial court to rest its damages award upon the statement because evidence of these expenses was not introduced at the time of trial. They further argue that because no evidence of such damages was introduced at trial the trial court did not have a reasonable basis upon which to compute damages and therefore a directed verdict should have been granted at that time.

The defendants' argument overlooks the evidence elicited from Mr. McDaniel at trial on both direct and cross-examination that since May 1980, he had been responsible for the mortgage payments, real estate taxes and insurance premiums on the property. The rule is often stated that in order for the evidence to be sufficient to warrant recovery of damages there must be some reasonable basis for computation which will enable the trier of facts to arrive at an approximate estimate thereof. *Sampson v. Hunt,* 233 Kan. 572, 586, 665 P.2d 743 (1983); *Venable v. Import Volkswagen, Inc.,* 214 Kan. 43, 50, 519 P.2d 667 (1974). The uncontroverted evidence presented at trial established the plaintiffs had incurred these expenses on the property since May 1980. The updated statement of expenses submitted by the plaintiffs merely provided the trial court with the exact amount of these expenses testified to at trial. The acceptance of this evidence by the trial court falls within the spirit of the rule that it is discretionary whether the trial court permits either or both of the parties to reopen a case for introduction of additional evidence after having rested. See *Cansler v. Harrington,* 231 Kan. 66, 68, 643 P.2d 110 (1982); *Westamerica Securities, Inc. v. Cornelius,* 214 Kan. 301, 306, 520 P.2d 1262 (1974). Here there is no showing of an abuse of discretion which would warrant a

reversal of the award based on the statement of expenses submitted by the plaintiffs.

The defendants next contend the trial court erred in awarding the plaintiffs damages for the use of their money and credit by the defendants over the years in question. The defendants contend this "risk factor judgment" was an abuse of discretion because the plaintiffs did not seek recovery for these damages in their pleadings and because no evidence was introduced at trial to support such an award. This court has pointed out in prior cases that the fact a party requests one form of equitable relief, *i.e.*, that his title be quieted, does not bar the trial court from rendering such other different and equitable relief as may be justified by the evidence. *Fuqua v. Hanson*, 222 Kan. 653, 656, 567 P.2d 862 (1977); *Benton v. Benton*, 215 Kan. 875, 879, 528 P.2d 1244 (1974). The defendants argue the plaintiffs had no risk at any time because the value of the house far exceeded $40,000 in 1964 when the plaintiffs obtained the loan.

Under all the facts and circumstances presented by this case we find it improper to award the plaintiffs damages for what the trial court termed an "interest charge for the exposure or risk factor of the $40,000 initially obtained for the benefit of the Defendants." The plaintiffs did not seek recovery in their pleadings of "risk factor" damages or present any evidence to support such an interest charge; the parties did not contract orally or otherwise for such an interest charge; no statute provides for the payment of such an interest charge; the value of the house far exceeded $40,000 in 1964 when the plaintiffs obtained the loan; and, more particularly, the parties were manuevering throughout these dealings for the purpose of defeating the payment of taxes due and owing the United States. Neither the plaintiffs nor the defendants come into court for equitable relief with clean hands. Therefore the "risk factor" judgment in the amount of $25,798.64 in favor of the plaintiffs is set aside and vacated.

Finally, the defendants and the United States both contend the trial court erred in holding the plaintiffs' entire judgment constituted an equitable mortgage. They contend only the mortgage payments to Prudential, the real estate taxes and the insurance premiums paid by the plaintiffs should constitute the equitable mortgage, but the "risk factor" is merely a judgment lien which

is inferior to the federal tax liens and cannot be foreclosed against the defendants' homestead interest in the property. Having determined the "risk factor" award to be invalid, we are concerned only with the priority of the remaining judgment over the federal tax liens.

The United States expressly concedes in its brief that the mortgage payments, real estate taxes and insurance premiums paid by the plaintiffs on the property enjoy priority over the federal tax liens. We are in agreement with this conclusion. In *United States v. Rodgers,* 76 L.Ed.2d at 246, the Supreme Court restated the axiom that although the definition of underlying property interests is left to state law, the consequences that attach to those interests, including priority of federal liens, is a matter left to federal law. The priority of federal tax liens over other interests is set forth in 26 U.S.C. § 6323 (1976). A federal tax lien is not valid against the specific interest holders named in this statute—security interest holders, judgment lien creditors, purchasers or mechanic's lienors—whose interests have attached prior to the filing of the tax liens. *U.S. v. Pioneer American Ins. Co.,* 374 U.S. 84, 88, 10 L.Ed.2d 770, 83 S.Ct. 1651 (1963). See also *United States v. Equitable Life,* 384 U.S. 323, 327-28, 16 L.Ed.2d 593, 86 S.Ct. 1561 (1966). It is generally recognized that insurance premiums, real estate taxes and costs paid by a mortgagee constitute additional liens which are secured by the mortgage. See, *e.g.,* 55 Am. Jur. 2d, Mortgages §§ 268, 284, 631-32; *Farmers & Merchants Bank v. Copple,* 190 Kan. 170, 175, 373 P.2d 219 (1962); *Douthitt v. Farrell,* 60 Kan. 195, 200-01, 56 Pac. 9 (1899). In this case McDaniel's equitable interest in the property was secured in 1964 by the transfer of title to the property to him. The unreimbursed mortgage payments, insurance premiums and real estate taxes paid by the plaintiffs to protect their interest in the property created an equitable lien on the property which relates back to the 1964 security arrangement and which has priority over the subsequently filed federal tax liens. Accordingly, we hold the plaintiffs' judgment in the amount of $18,713.70 has priority over the tax liens of the United States.

The judgment of the lower court is affirmed as modified.