NOT DESIGNATED FOR PUBLICATION

No. 127,951

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

LAURIE K. BOORIGIE,
*Appellee,*

and

ROBERT M. BOORIGIE,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; LINDA D. KIRBY, judge. Submitted without oral argument. Opinion filed February 21, 2025. Appeal dismissed.

*Jon Von Achen*, of Wichita, for appellant.

*James A. Walker* and *Kacey S. Mayes*, of Triplett Woolf Garretson, LLC, of Wichita, for appellee.

Before COBLE, P.J., SCHROEDER and ISHERWOOD, JJ.

PER CURIAM: Robert M. Boorigie, dissatisfied with how the district court divided the marital assets of his 30-plus-year marriage, timely appeals from the district court's amended journal entry of divorce and division of property. He argues the district court construed his ex-wife, Laurie K. Boorigie's, motion to settle the journal entry as a motion to alter or amend judgment, but such a motion was untimely. Robert further asserts the district court erred in ruling on Laurie's motion without an evidentiary hearing. Finally, he argues the district court erred in considering Laurie's memorandum in response to his objection to her proposed journal entry, asserting such a response is not permitted under

1

Supreme Court Rule 170 (2024 Kan. S. Ct. R. at 234). After a careful and extensive review of the record, we dismiss Robert's appeal because he acquiesced in the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Robert and Laurie married in 1987. In March 2020, Laurie filed for divorce, and the matter proceeded to trial in August 2022. The issues on appeal turn largely on the district court's ruling and the parties' actions involving two marital assets: (1) Robert's interest in Worldwide Entertainment, LLC (Worldwide), a company in which he made substantial investments, and (2) funds held in a brokerage account with 6 Meridian, a financial planning service.

The district court filed a memorandum journal entry and divorce decree in February 2023. With respect to the funds held in 6 Meridian, the district court found Robert had withdrawn $350,942 after Laurie filed for divorce, contrary to its restraining orders regarding the use and transfer of certain marital property during the pendency of the proceedings. The district court ordered Robert to make a disgorgement payment to Laurie of $175,471 for her share of the funds he withdrew. Robert ultimately made this payment in March 2024. The district court awarded 88 percent of the remaining balance in the 6 Meridian account to Laurie and 12 percent to Robert. However, the distribution of those funds was stayed until the district court determined the value and distribution of Robert's interest in Worldwide.

The district court specifically held open and reserved jurisdiction over the value of Worldwide because it had not been presented with sufficient evidence at the trial to determine Worldwide's current value to make an equitable division of the marital asset. The district court further reserved jurisdiction to modify the disposition of other assets once a determination had been made regarding Worldwide. The district court ordered the parties to exchange information and confer in hopes they could reach an agreed-upon

2

valuation for Worldwide. Robert's counsel contacted Laurie's counsel via email proposing a valuation of $214,693 with an explanation of how they arrived at $214,693. Laurie's counsel accepted his offer.

Laurie then filed a motion to settle the journal entry based on the agreed valuation of Worldwide. At the hearing on Laurie's motion, the district court heard arguments from both parties. Robert, through his new attorney, disputed that he had authorized the valuation offer made by his previous attorney. Robert's attorney then told the district court it had four options to determine the value of Robert's interest in Worldwide: (1) Set the matter for an evidentiary hearing; (2) appoint a special master to investigate and determine the value; (3) accept Laurie's proposed valuation of $214,693; or (4) accept his proposed valuation of zero. Robert clearly told the district court it could decide whether an evidentiary hearing was necessary. The district court proceeded to resolve the issue without an evidentiary hearing, finding an offer had been made by Robert's former counsel, which Laurie accepted. The district court adopted that agreed upon valuation of $214,693.

Laurie's counsel prepared an amended journal entry of judgment pursuant to Kansas Supreme Court Rule 170 in which certain marital property would be divided as follows:

- An equalization payment from Robert to Laurie for $147,984;
- An award to Laurie for $135,171 from the funds held in her attorney's trust account and $10,000 to Robert;
- $175,946 from the 6 Meridian account to Robert;
- Robert's full interests in Worldwide awarded to him at a value of $214,693;
- A 2012 Honda Civic would be sold and the proceeds split equally or one party could buy out the other party's one-half interest;

- A four-wheeler awarded to Laurie; and
- Robert's 50 percent interest in Safarik Tool Company to Robert.

The proposed journal entry also restricted Robert from accessing the funds in the 6 Meridian account until the equalization payment was made.

Robert filed an objection to the journal entry, arguing, among other things, that the district court had not authorized an equalization payment. Laurie filed a memorandum in response to Robert's objection, explaining the district court had adopted her proposed adjustments and distribution from the balance sheet she submitted at the motion hearing, which requested an equalization payment of $152,621.50. Laurie explained this was reduced to $147,984 to account for the redistribution of vehicles; namely, the assigned value of $9,275 for the 2012 Honda Civic which was removed from Robert's assets because the parties agreed it should be sold and they would equally split the proceeds from its sale. The district court found the equalization payment of $147,984 was consistent with its prior orders and intent regarding the equitable distribution of marital property.

An amended journal entry of judgment was ultimately filed on January 22, 2024, which required Robert to make the equalization payment within 30 days and prohibited him from altering his interests in marital assets awarded until he made the payment. Robert failed to make the equalization payment, so Laurie obtained an order for garnishment of the funds in the 6 Meridian account, which was served on 6 Meridian on March 1, 2024. 6 Meridian filed an answer as garnishee stating it held no funds owned by Robert. Account records from 6 Meridian showed Robert withdrew the remaining balance in the account on February 16, 2024.

On February 20, 2024, Robert filed a motion to alter or amend the judgment, arguing the district court erred in dividing certain assets and modifying certain terms for

4

spousal maintenance. Laurie agreed the order regarding maintenance should be amended but disputed Robert's remaining arguments. The district court heard arguments from the parties at a hearing in May 2024. Following the hearing, the district court denied Robert's motion to alter or amend judgment, except it did modify the maintenance provision based on their agreement. Additional facts are set forth as necessary.

ANALYSIS

*Robert Acquiesced to the District Court's Order*

Laurie argues we should dismiss Robert's appeal because (1) he voluntarily accepted some of the benefits of the judgment by withdrawing funds from the 6 Meridian account and (2) he voluntarily accepted some of the burdens of the judgment by making a separate disgorgement payment to Laurie required under the district court's order. Robert did not file a reply brief to address this argument.

*Standard of Review*

Because acquiescence involves jurisdiction, whether a party acquiesced to a judgment is a question of law subject to unlimited review. *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1271, 136 P.3d 457 (2006).

*Discussion*

Acquiescence to a judgment—which cuts off the right of appellate review— "occurs when a party voluntarily complies with a judgment by assuming the burdens or accepting the benefits of the judgment contested on appeal. A party that voluntarily complies with a judgment should not be allowed to pursue an inconsistent position by appealing from that judgment. [Citation omitted.]" 281 Kan. at 1271. Compliance with a

5

court order imposed over a party's objection does not constitute acquiescence. See *Harsch v. Miller*, 288 Kan. 280, 292, 200 P.3d 467 (2009). Whether a payment is voluntary depends on the facts of each case, and the issue is whether the payer intended to waive his or her legal rights. *Varner v. Gulf Ins. Co.*, 254 Kan. 492, 497, 866 P.2d 1044 (1994). "A party need not risk contempt of court to avoid an accusation of acquiescence." *In re Metcalf Associates-2000*, 42 Kan. App. 2d 412, 423-24, 213 P.3d 751 (2009). Additionally, where a judgment or decree involves distinct and severable matters, an acceptance of the burdens or benefits of one or more parts thereof will not prevent an appeal as to the remaining contested parts of the judgment. *Huet-Vaughn v. Board of Healing Arts*, 267 Kan. 144, 147, 978 P.2d 896 (1999).

We find Laurie's argument only partially correct. Robert's separate disgorgement payment did not cut off his right to appeal because it was done in compliance with the district court's order under threat of contempt. That payment is unrelated to the issues surrounding the disposition of property *after* the district court determined the value of Worldwide. See *In re Metcalf Associates-2000*, 42 Kan. App. 2d at 423-24. The disgorgement payment was based on Robert's previous withdrawals from the 6 Meridian account in violation of the district court's prior restraining orders, which is a distinct and severable matter. See *Huet-Vaughn*, 267 Kan. at 147.

Laurie is correct, however, that Robert acquiesced to the district court's property allocation by withdrawing the remaining funds from the 6 Meridian account. Those funds were inherently tied to Robert's obligation to make the equalization payment to Laurie based on the district court's determination of the value of Worldwide and subsequent adjustment to the division of other property. The funds in the 6 Meridian account were awarded to Robert, but he was specifically instructed not to withdraw any funds until the equalization payment of $147,984 was made. He accepted the benefit of the district court's order by withdrawing the funds, albeit in violation of the conditions regarding their withdrawal. Robert cannot violate the conditions of a court order to avail himself of

6

the benefits of that order while simultaneously disavowing the burdens of the order by seeking to appeal the order. Simply put, Robert cannot have his cake and eat it too.

In *Cybertron International, Inc. v. Capps*, No. 122,439, 2022 WL 128842, at \*6-8 (Kan. App. 2022) (unpublished opinion), another panel of this court dismissed Cybertron's cross-appeal, which argued the district court improperly aggregated multiple contract breaches into a single award for liquidated damages. The *Cybertron* panel extensively discussed Kansas precedent regarding the doctrine of acquiescence and concluded Cybertron could not cross-appeal the amount awarded where it had already initiated garnishment actions against Capps for the full amount of the award. 2022 WL 128842, at \*7.

In reaching its conclusion, the *Cybertron* panel quoted the following language from *McDaniel v. Jones*, 235 Kan. 93, 103, 679 P.2d 682 (1984):

> """A party who enforces payment or satisfaction of a judgment or decree in his favor, by suing out execution or otherwise, generally waives his right to bring or prosecute an appeal or writ of error, although the execution was ordered under a misapprehension, for which appellee was not responsible. Under this general rule a right of appeal is waived, even though appellant claims that the judgment is for less than he was entitled to recover, unless there is a statutory provision to the contrary. . . .
>
> """However, the right to appeal or bring error is not waived where the judgment or decree is of such a character, or the circumstances are such, that there is no inconsistency between such enforcement and the appeal or proceeding in error. . . ."' 235 Kan. at 103 (quoting 4 C.J.S., Appeal and Error § 220)." *Cybertron*, 2022 WL 128842, at \*6.

The rationale in *Cybertron* is sound, and we will apply it here. Like Cybertron's actions in attempting to collect on the full judgment, Robert's actions in taking assets awarded to him under the amended journal entry—which settled the remaining division

of marital property—are inconsistent with his allegations of error on appeal. See 2022 WL 128842, at *6. Accordingly, we dismiss his appeal based on his acquiescence to the judgment. However, even if Robert had not acquiesced, we would still find his arguments unpersuasive as further explained below.

*We Find No Error in the Way the District Court Settled the Journal Entry*

Robert argues the district court should not have considered Laurie's motion to settle the journal entry. Without meaningful explanation or citation to the record, Robert contends:  "It is clear that the District Court did construe [Laurie's] Motion to Settle a Journal Entry as a Motion to Alter or Amend [judgment]." Based on this conclusory assertion, Robert argues Laurie's motion to settle journal entry was an untimely motion to alter or amend judgment because it was filed beyond K.S.A. 2023 Supp. 60-259(f)'s 28-day time limit.

Robert's argument fails because there is no indication the district court construed Laurie's motion as a request to alter or amend judgment under K.S.A. 2023 Supp. 60-259(f). Robert claims this issue was preserved before the district court, but the citation he provides does not reflect the district court construed the motion as he claims. He offers nothing more than a conclusory argument. In fact, the record reflects there was no final journal entry—thus, nothing to alter or amend—on the division of the marital assets until the amended journal entry was filed.

We deem Robert's argument waived due to improper briefing as he fails to provide factual support from the record to establish his claim. The burden is on the party making a claim "'to designate a record sufficient to present its points to the appellate court and to establish its claims.'" *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013). The party claiming error must cite to the record on appeal with pinpoint citation to the volume and page number of the record where the issue was raised

8

and ruled on below. Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36). Where a party fails to do so, we may presume there is no factual support for the argument. Supreme Court Rule 6.02(a)(4). Had we not dismissed Robert's appeal based on acquiescence, we would decline to consider this issue due to improper briefing. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018) (argument inadequately briefed deemed abandoned).

*We Decline to Consider Robert's Argument Regarding the District Court's Resolution of the Journal Entry Without an Evidentiary Hearing*

Robert argues the district court erred in resolving Laurie's motion to settle the journal entry without holding an evidentiary hearing to determine the value of Worldwide. He claims this was in violation of his due process rights. Laurie argues this is not an issue of due process; rather, it is a fact question. She further asserts the issue should not be considered because any error was invited by Robert. Laurie is at least partially correct.

Here, the district court held a nonevidentiary hearing on the motion to settle journal entry where both parties presented their arguments. Robert told the district court it had four options to determine the value of Worldwide: (1) Hold an evidentiary hearing, (2) appoint a special master, (3) accept Laurie's proposed valuation, or (4) accept his proposed valuation. Robert made no argument insisting upon an evidentiary hearing or otherwise objecting to the resolution of the issue without one. In fact, Robert explicitly told the district court it should make the determination whether an evidentiary hearing was necessary, stating: "So we would ask you to make a determination as to whether or not we need an evidentiary hearing, want to appoint a special master or you want to make the determination here today and reassign based upon those items you reserved to yourself. That's all we're asking."

9

If the district court's method to resolve the journal entry was error, Laurie is correct it was invited error. It is well-established that "a party cannot invite error and then complain of the error on appeal." *Water Dist. No. 1 of Johnson Co. v. Prairie Center Dev.*, 304 Kan. 603, 618, 375 P.3d 304 (2016). Robert invited the district court to choose from four options to resolve the issue and took no position on whether an evidentiary hearing was needed; rather, he asked the district court to make that determination on its own accord. His claim does not support a due process violation when he asked the district court to make the decision, and he cannot now complain the district court erred by choosing one of the four options he suggested. Had we not dismissed his appeal due to acquiescence, we would decline to consider this issue based on invited error.

*We Find No Error by the District Court in Resolving the Proposed Journal Entry*

Finally, Robert argues the district court erred in considering and adopting the equalization payment proposed in Laurie's response to his written objection to the amended journal entry. Robert raises a question regarding the interpretation and application of Rule 170. Although he correctly notes the rules of statutory construction apply to the interpretation of Supreme Court rules (see *Mundy v. State*, 307 Kan. 280, 301, 408 P.3d 965 [2018]), Robert offers only a conclusory argument to support his claim that the relevant language of the rule contained in subsections (d)(2) and (d)(3) clearly and unambiguously does not permit the drafting party to submit a written response to the nondrafting party's objection. Rule 170(d)(2) and (d)(3) set forth the procedure for resolving an objection by the nondrafting party to an order drafted by the opposing party as follows:

"(2) If there is an objection, the parties must make a reasonable effort to confer to resolve the objection and, if agreement is reached, the drafter must submit the agreed journal entry to the court for approval. A 'reasonable effort to confer' requires more than

10

sending a communication to the opposing party. It requires that the parties in good faith converse, compare views, and deliberate, or in good faith attempt to do so.

"(3) If—after reasonable effort to confer—the parties have not agreed on the terms of the order, the drafter must submit the original draft and the objection to the court and the court must settle the order, with or without a hearing." 2024 Kan. S. Ct. R. at 234.

This language says nothing one way or the other about whether a written response to the objection may also be filed, which is the determinative point of this issue. Robert cannot establish, as he claims, "there is only one interpretation of Supreme Court Rule 170," where it is effectively silent on the point in dispute. If we had not dismissed his appeal based on acquiescence, we would also find this argument waived or abandoned due to inadequate briefing because Robert fails to establish the underlying premise of his argument. See *In re Marriage of Williams*, 307 Kan. at 977.

Appeal dismissed.