NOT DESIGNATED FOR PUBLICATION

No. 126,443

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

CHRISTINE JOHNSON,
*Appellant*,

and

BRIAN JOHNSON,
*Appellee.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KELLIE E. HOGAN, judge. Submitted without oral argument. Opinion filed August 1, 2025. Affirmed.

*David J. Morgan*, of David Morgan Law Firm LLC, of Wichita, for appellant.

*Stephen M. Turley*, of Hinkle Law Firm LLC, of Wichita, for appellee.

Before MALONE, P.J., SCHROEDER and GARDNER, JJ.

PER CURIAM: Christine Johnson received a divorce and now appeals the district court's division of property and an award of attorney fees. Brian Johnson requests appellate attorney fees. Finding no error, we affirm, but we deny Brian's motion for fees.

FACTUAL AND PROCEDURAL BACKGROUND

Brian and Christine married in 2005. Brian is self-employed in real estate and Christine is a physician's assistant in cardiology. Christine petitioned for divorce in April 2020.

The district court held a three-day evidentiary hearing on the petition for divorce in June 2022. Brian and Christine testified and presented other testimonies and several exhibits. In addition to standard divorce matters, Brian presented evidence in support of two motions that he had filed, asking the district court to find Christine in indirect contempt of the temporary parenting plan. He also requested attorney fees, arguing Christine continuously violated the parenting plan and thus forced unnecessary contempt proceedings.

In August 2022, the district court adopted the court-appointed domestic conciliator's custody and parenting time recommendations. The district court granted both parents joint legal custody and Christine primary residential custody. Brian was awarded parenting time and ordered to pay child support. Christine was ordered to pay spousal maintenance of $440 per month for 43 months to offset Brian's support obligations. The district court granted one of Brain's two motions to hold Mother in contempt, finding Mother in indirect contempt in 2021 for once refusing to allow Brian parenting time.

For its property division, the district court created a spreadsheet showing the balances and values assigned to each marital debt and asset. The district court confirmed that the valuation date was not changed, and values were established as of December 31, 2021. Christine was awarded the marital residence at a value of $395,780. The district court reduced the value by the balance due on the mortgage debt encumbering the residence, resulting in a net value of $228,679. Largely because of this award, the

property division was unequal, so the district court awarded Brian an equalization judgment of nearly $131,000, to be paid within 60 days.

The district court awarded Brian attorney fees based on "unreasonable conduct" by Christine that violated the agreed temporary order, the parties' agreements, or the court's admonishments. The district court did not specify the amount of fees but reserved that issue for a separate hearing.

Brian and Christine each moved to modify the judgment and make additional findings. Brian asked the district court to determine the specific amount of attorney fees owed and to clarify what method of payment Christine could use to satisfy the equalization payment. Christine moved to alter or amend and objected to Brian's proposed journal entry of judgment and parenting plan. After a hearing on those motions, the district court ordered Christine to make a cash payment via refinancing.

After disputes over the language of the final journal entry, the district court finalized the journal entry of judgment and divorce decree in December 2022. The journal entry noted that the amount of attorney fees had not been resolved. But in a later order, the district court awarded Brian $15,000 in attorney fees for Christine's "unreasonable conduct" including "actions regarding property, 2020 and 2021 tax returns, and property valuations."

Christine filed another motion to alter or amend and for additional findings in January 2023. She raised arguments about the filing date, postfiling mortgage payments, postfiling contributions, tax discounts, the "Woodrow property," a Mercedes-Benz, and the equalization payment. Brian responded and the district court heard arguments over two days in February and March. The district court ultimately denied all claims that Christine had raised in her motion, except two adjustment claims that are not at issue on appeal.

Christine timely appeals the district court's ruling and all the ruling and orders of the district court leading up to it.

ANALYSIS

I.      *Did Christine acquiesce in the district court's property division by selling the house?*

Before we address the issues Christine raises on appeal, we must address Brian's assertion that we should dismiss this appeal because Christine acquiesced in the district court's judgment by selling the marital residence. Brian notes that by doing so, Christine disposed of more than 16% of the marital estate making it "[im]possible to implement a mandate on remand," so the appropriate remedy is to dismiss her appeal. Brian cites *In re Marriage of Zimmerman*, No. 96,466, 2008 WL 2678663 (Kan. App. 2008) (unpublished opinion) (finding husband voluntarily accepted the benefits of the divorce decree by moving to compel his ex-wife to execute quitclaim deeds on properties that the district court awarded him, thus acquiescing in the judgment). After the district court awarded Christine the marital residence, she asked Brian to sign a quitclaim deed conveying his interest in the residence. Brian complied and signed the deed as requested. Christine recorded the deed and later listed and sold the residence.

*Standard of Review and Basic Legal Principles*

Acquiescence involves jurisdiction, so whether a party acquiesced to a judgment is a question of law subject to unlimited review. *Alliance Mortg. Co. v. Pastine*, 281 Kan. 1266, 1271, 136 P.3d 457 (2006).

> "Acquiescence to a judgment cutting off the right of appellate review occurs
> when a party voluntarily complies with a judgment by assuming the burdens or accepting

4

the benefits of the judgment contested on appeal. A party that voluntarily complies with a judgment should not be allowed to pursue an inconsistent position by appealing from that judgment. [Citation omitted.]" *Pastine*, 281 Kan. at 1271.

See *Almack v. Steeley*, 43 Kan. App. 2d 764, 774-75, 230 P.3d 452 (2010) (applying *Zimmerman* and finding "voluntary actions" establishing acquiescence). But we do not strictly apply the rule that acquiescence cuts off one's right to appeal in domestic cases because of the equitable considerations involved. *In re Marriage of Yount & Hulse*, 34 Kan. App. 2d 660, 667, 122 P.3d 1175 (2005). And we do not imply a waiver of a party's right to appeal from measures an appellant takes in defense of and to protect the party's rights while an appeal is pending. *Heartland Presbytery v. The Presbyterian Church of Stanley, Inc.*, 53 Kan. App. 2d 622, 636, 390 P.3d 581 (2017).

*Acquiescence in Property Division*

Christine contends that given the equitable considerations, including that she was under considerable financial strain, her sale of the marital residence should not be considered acquiescence. She also argues that the issue related to the marital residence is severable from the other issues on appeal. Christine does not challenge the value assessed for the house but challenges the valuation of her retirement accounts and how they affect the settlement payment calculations. She contends that "[t]he only issue related to the house is the amount of note/mortgage included in the equalization payment." See *Gordon v. Gordon*, 218 Kan. 686, 690-691, 545 P.2d 328 (1976) (finding acceptance of alimony payments does not bar an appeal from an order denying a requested increase in alimony).

Key to our determination is "whether the position taken by the party on appeal is inconsistent with the judgment." *Layne Christensen Co. v. Zurich Canada*, 30 Kan. App. 2d 128, 138, 38 P.3d 757 (2002); cf. *In re Marriage of Hughey*, No. 70,932, 1994 WL 17120874, at *1 (Kan. App. 1994) (acquiescence in property division when after signing

5

a satisfaction of judgment acknowledging receipt of monies and property, wife sought more money and property on appeal). Christine's appeal challenges primarily property division matters, challenging the valuation date and individual divisions of assets.

We agree with Christine. When a judgment or decree involves distinct and severable matters, an acceptance of the burdens or benefits of one or more parts of it will not prevent an appeal as to the remaining contested parts of the judgment. *Huet-Vaughn, M.D. v. Kansas State Bd. of Healing Arts*, 267 Kan. 144, 147, 978 P.2d 896 (1999). The separability exception provides that when a party to an appeal accepts payment of the judgment as directed by the district court, that party shall not be deemed to have acquiesced in the judgment when the issues on appeal do not affect the obligation for the payment or the right to receive that portion of the judgment. *McDaniel v. Jones*, 235 Kan. 93, 101-02, 679 P.2d 682 (1984). See *Hemphill v. Ford Motor Co.*, 41 Kan. App. 2d 726, 732, 206 P.3d 1 (2009); *Martin v. Martin*, 5 Kan. App. 2d 670, 672, 623 P.2d 527 (1981) (remarriage is not acquiescence in division of property; marital dissolution is severable from property division); *In re Marriage of Ditch*, No. 84,216, 2000 WL 36746542, at *2 (Kan. App. 2000) (appellant's acquiescence in the trial court's orders on property division and attorney fees did not prevent appellate review of argument on child custody and maintenance).

Neither party contests the court's allocation of the house to Christine, or the value assessed for the house. Brian fails to show how Christine's sale of the house is inconsistent with her positions on appeal. The district court's judgment thus consists of distinct parts, so that acquiescence to one portion does not affect another. See, e.g., *Huet-Vaughn*, 267 Kan. at 147 (holding if a judgment involves separate and distinct matters, accepting the burdens or benefits of one part will not prevent an appeal as to the remaining contested parts of the judgment); *Wollard v. Peterson*, 145 Kan. 631, 633, 66 P.2d 375 (1937) (payment of principal amount of judgment was not acquiescence when appeal challenged only interest and attorney fees).

6

Accordingly, and considering precedent disfavoring acquiescence in this context, we find that Mother's sale of the house does not amount to an acquiescence that deprives this court of jurisdiction to consider the substance of Christine's appeal.

II..    *Has Christine designated a sufficient record to decide her appellate claims?*

Brian also claims that Christine's appeal must be dismissed because she fails to designate an adequate record for us to review her claims. Brian points out that the parties admitted "scores of exhibits" at trial, yet Christine failed to include all of them in the record on appeal, so this court lacks a complete record of what the district court considered. As Brian notes, the district court's written decision states that in dividing the parties' property it considered all trial exhibits.

Appellate courts may not speculate about the evidence that the district court relied on in making the property division. Christine, as the party challenging the district court's decision, has the duty to designate a record sufficient to establish her claim of error. And a failure to provide an adequate record of the evidence the trial court considered in dividing the parties' property precludes appellate review. See *State ex rel. Stovall v. Alivio*, 275 Kan. 169, 172, 61 P.3d 687 (2003).

But we have a sufficient record for our review. Christine has included the evidence necessary for us to review the district court's rulings that she appeals, including both parties' property division proposals. Cf. *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 715, 229 P.3d 1187 (2010) (dismissing partly based on appellant's failure to include property division proposals).

III.    *Did the district court abuse its discretion in setting the valuation date?*

We thus reach the merits of Christine's appeal. We first review her challenge to the district court's valuation date, arguing it was arbitrarily set as December 31, 2021. Christine primarily contends that the decision was unsupported by factual findings and unfairly benefitted only Brian. She also argues that the district court lacked authority to adopt the December 31 date that Brian proposed because he did not file a motion or give her notice of his proposed valuation date.

*Proceedings to Set the Valuation Date*

We first review the relevant facts. In May 2022, Christine moved to set the valuation date as June 30, 2018— the date she alleged the parties separated their finances. Yet it is uncontested that the parties still lived together on that date and continued to live together in the same residence even after Christine filed for divorce in 2020. Pursuant to a temporary order, Brian paid the mortgage, utilities, and other fees for the marital residence until he moved out in June 2020.

At the hearing on Christine's motion, Brian acknowledged that the parties lived separately in 2018 but in the same residence. But he claimed that the parties were "still attempting reconciliation" in 2018, that he did not move out until July 2020, and that he had paid the mortgage and bills during that time. He alleged that the marital estate included only two major assets:  Christine's 401(k) account and the house; and that Christine's proposed valuation date unfairly favored her because the market prices for both assets had increased significantly since their 2018 valuations. Brian also argued that it would be easier to get financial information or statements at the end of the year rather than in the middle of the year. He also noted that four years had passed since Christine's preferred 2018 date and requested that the valuation date be set on December 31, 2021.

Christine replied that Brian had never notified her that he had a preferred valuation date. But the pretrial order recognizes the possibility of a December 31 valuation date:

> "The Court should adopt the filing date (April 30, 2020) or separation date (June 2018) values for the property as stated on Petitioner's asset division spreadsheet and divide the property as stated on the spreadsheet. If the court adopts a valuation date of 12-31-21, it should carve out of the marital estate principal pay down by Petitioner on the house mortgage and her 401k contributions and appreciation thereon from the filing date to [12/31/21]."

She also pointed out that Brian had not contributed to his retirement accounts for several years and had reported a decrease in value for his company the previous two years. Christine suggested that setting an earlier valuation date would "eliminate[] divorce planning and manipulation."

The district court denied Christine's motion for the 2018 date and set the valuation date as December 31, 2021, as Brian had suggested. The trial judge explained:

> "The [2018] date just doesn't make any sense to me. I like the December 31st, 2021, because it does seem easier to define what something was actually worth at that time. So I'll pick that as the valuation date, but still following the case and statutory law about taking all things into consideration."

After acknowledging the year-and-a-half difference between this date and the filing of the petition for divorce, the trial judge stated that the "law allows [the court] to pick . . . the day of trial, so . . . I'll consider all the equity as I hear the evidence at trial, but . . . the [2018 date] doesn't make any sense, so I pick December 31."

Christine moved to alter or amend this ruling. The district court heard additional arguments on the issue on the first day of the divorce trial. Christine reasserted her

arguments about the June 2018 date and alternatively asked the district court to use the filing date in April 2020. She explained that since December 31, 2021, the value of her 401(k) had dropped by almost $100,000. So if the district court did not consider the current value, it could cause an "economic disaster" for her which could be avoided if the district court set the valuation date as the filing date. And the filing date would not cause a detriment to either party's retirement accounts.

Christine also informed the district court that she planned to show that Brian had intentionally skirted his responsibilities to contribute to his retirement accounts and pay child support arrearages, despite his ability to pay. She alleged that Brian had paid off $32,631in credit card debt and spent $47,987 on other things. Christine later testified that the parties had previously agreed that the value for the marital properties would be determined according to the filing date.

The district court ultimately denied Christine's motion to alter or amend, finding it would not be fair to set a date and then on the day of trial upend it all; and that such a change would require a continuance to allow the parties more time to prepare, yet the case had already been pending for over two years. But the district court noted that it would consider the changes in values as shown at trial in considering fairness and equity when making a final determination of the valuations.

*Standard of Review and Basic Legal Principles*

A district court's selection of a valuation date is governed by K.S.A. 2022 Supp. 23-2802(b):

> "Upon request, the trial court shall set a valuation date to be used for all assets at trial, which may be the date of separation, filing or trial as the facts and circumstances of the case may dictate. The trial court may consider evidence regarding changes in value of various assets before and after the valuation date in making the division of property."

10

Although the district court did not choose the date of separation, filing, or trial as the valuation date, the parties do not argue that the district court committed any legal error by not doing so. Christine asserts that the district court arbitrarily selected December 31, 2021, without any supporting findings, because of:

- Her greater contributions to her 401(k) and Brian's lack of contributions to his retirement accounts;
- the significantly higher value of her retirement savings than Brian's savings and fluctuation in that value after the filing date;
- the dramatic increase in market values;
- the decrease in the value of Brian's business; and
- Brian's sale of the Woodrow property.

The division of property must be just and reasonable, but it need not be equal. *Vandenberg*, 43 Kan. App. 2d at 715. And the burden of showing the district court abused its discretion is on the party asserting such abuse. *In re Marriage of Hair*, 40 Kan. App. 2d 475, 480, 193 P.3d 504 (2008). A district court abuses its discretion when its decision is: (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018).

*Discussion*

Although the district court did not make specific findings to support its choice of a valuation date, Brian's arguments that the district court apparently found persuasive fill that void and support the district court's rejection of Christine's proposed dates. In 2018, the parties still lived together and made efforts toward reconciliation, and until July 2020, Brian paid the mortgage and utilities for the marital residence. The court can consider when the financial involvement between the parties ended in determining the date. *In re Marriage of Cray*, 254 Kan. 376, 387-88, 867 P.2d 291 (1994). These facts support the

11

district court's rejection of Christine's proposed valuation dates of June 2018 and April 2020. Cf. *Singhal v. Singhal*, No. 100,068, 2009 WL 1692246, at *3-4 (Kan. App. 2009) (unpublished opinion) (finding substantial competent evidence supporting valuation date in March 2005 where reconciliation-type efforts continued until then, when husband formally moved out of marital home).

The district court also found that the end-of-year valuation date that Brian suggested would make valuations simpler and more accurate. This supports choosing December 31, 2021—the closest year end to the upcoming trial date in June 2022. And the district court assured the parties that it would consider evidence about the changes in value of various assets before and after the valuation date in dividing the property. The district court's selection of a valuation date complied with K.S.A. 2022 Supp. 23-2802(b). We thus find no abuse of discretion in the district court's choice of valuation date.

IV. *Did the district court abuse its discretion in dividing the parties' marital property?*

Christine appeals several of the district court's divisions of individual marital property. She challenges the district court's exclusion of the Woodrow property as a marital asset, its valuation of her 401(k) and postfiling contributions, its refusal to consider her postfiling mortgage payments as a separate asset, and its decision not to "tax treat" the parties' retirement accounts. The first three arguments are based on the district court's failure to set the valuation date on the filing date in April 2020.

*Standard of Review and Basic Legal Principles*

Christine asserts that these issues raise questions of law, so appellate review is unlimited. But this is incorrect. The district court has "'wide discretion'" in adjusting the financial obligations of the parties in a divorce action, and we do not disturb the district

court's findings unless a "'clear abuse of discretion'" is shown. *In re Marriage of Rodriguez*, 266 Kan. 347, 352, 969 P.3d 880 (1998).

Judicial discretion will vary depending on the character of the question presented. Generally, a district court's decision will be upheld if reasonable persons could differ about the propriety of the decision. But an abuse of discretion may be found if the district court's decision fails to properly consider statutory limitations or legal standards. *State v. Woodward*, 288 Kan. 297, 299, 202 P.3d 15 (2009).

Christine also asserts that the property division is unsupported by substantial competent evidence. The district court commits an error of fact if substantial competent evidence does not support a factual finding on which the exercise of discretion is based. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011). This court reviews the evidence in a light most favorable to the prevailing party to determine whether the court's factual findings are supported by substantial competent evidence and whether those findings support the court's legal conclusion. *Vandenberg*, 43 Kan. App. 2d at 704. Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019).

*Woodrow Property*

In Brian's initial domestic relations affidavit, filed in October 2020, Brian listed the Woodrow property as a marital asset with an estimated value of $140,000. The affidavit stated that Brian shared a one-half interest in the property with a third party. Brian sold the property in August 2021 and testified that he spent most of the proceeds on attorney fees and other expenses. The rest of the proceeds—$7,438.45 as of the valuation date—were in a separate checking account.

13

Brian successfully argued in the district court that only $7,438.45 should be included in property division calculations. Christine contends that Brian did not show any legal basis for this argument. Still, the district court agreed and excluded the Woodrow property as a line item for the marital estate.

Christine objected to this decision and requested additional findings in her motion to alter and amend. She now argues that she had a vested common ownership interest in the Woodrow property when she petitioned for divorce, and the filing date controls this issue. She claims that it was clear error to divest her of this interest based on Brian's sale of the property. She thus asserts that the property should be included in the marital estate at a value of $70,000, and the remaining proceeds should be taken out of the bank account.

Christine also contends that the district court should have treated the division of the Mercedes-Benz similarly, by excluding it from the marital estate. By the valuation date, she had sold a Mercedes-Benz she had inherited from her father and had used its proceeds to pay expenses. Yet, the district court included the car in the marital estate. Christine asserts that the inconsistency in the treatment of these assets shows that the division of the Woodrow property was not fair and equitable.

Under K.S.A. 2022 Supp. 23-2801(a), property owned during a marriage becomes marital property for purposes of assessing assets in divorce proceedings on the date that the petition for divorce is filed:

> "All property owned by married persons . . . or acquired by either spouse after marriage, and whether held individually or by the spouses in some form of co-ownership, . . . shall become marital property at the time of commencement . . . of an action in which a final decree is entered for divorce."

14

Subsection (b) of the statute similarly provides that "[e]ach spouse has a common ownership in marital property which vests at the time of commencement of such action." K.S.A. 2022 Supp. 23-2801(b). And when determining an appropriate distribution of these assets, "the extent of the vested interest [is] to be determined and finalized by the court, pursuant to K.S.A. 23-2802, and amendments thereto." K.S.A. 2022 Supp. 23-2801(b).

It is undisputed that the Woodrow property meets this definition of marital property. Christine had a vested interest in the property when she filed the petition for divorce. See K.S.A. 2022 Supp. 23-2801(b). Still, the statute does not compel the court to include the Woodrow property as a marital asset when dividing the estate because it has discretion to determine the extent of every vested interest. And the district court included the Woodrow property as a marital asset, though not in the way that Christine requests, by including its remaining proceeds in the overall calculation.

But even assuming that this was an error, Christine does not show that the district court's judgment should be reversed, because Christine does not show that the district court abused its discretion in setting or using the valuation date. In *Cray*, 254 Kan. at 387, our Supreme Court held that "[w]hen the time of valuation becomes an issue in a contested case, the trial court . . . should set the valuation date. *In doing so, all the marital assets shall be valued as of the same date*." (Emphasis added.) The district court valued all assets as of the same date and used the value of the Woodrow property on the valuation date in December 2021.

And even if the district court acknowledged in its division spreadsheet that Brian's one-half interest in the property was initially worth $70,000 (half of the estimated $140,000 value of the entire property) it is unclear whether this would have affected the court's final division. As Brian correctly argues, the district court was allowed to consider evidence about the sale and the use of the proceeds when deciding how to divide this

15

asset. See K.S.A. 2022 Supp. 23-2802(b). The value of the property to the marital estate on the valuation date was likely $0 because the estate no longer owned the property. So the district court could reasonably have divided only the remaining proceeds from the sale of the property.

To the contrary, the district court found that it was just and equitable to include the estimated value of the Mercedes-Benz as a marital asset, even though it did not do the same for the house. Although these findings appear to be inconsistent, the district court explained why:

> "I made the decision about the Mercedes because it is my recollection that we could not get a straight answer about this Mercedes, that it had no value and then suddenly it had value. I made the decision just in my attempt and duty to make a fair, just and equitable decision of the property."

The district court thus did not arbitrarily include Christine's asset and exclude Brian's. Nor does the record support Christine's contention that this decision was clearly unjust or unreasonable. We find no abuse of discretion.

*Valuation of 401(k) account*

Christine next asserts that the district court incorrectly valued her 401(k) account at $591,980.87 by erroneously including her postfiling contributions to the account in the valuation. She notes that the district court adopted the appropriate value of $400,645 in its initial memorandum decision, and Brian did not object to that at trial. Only after trial did Brian object in his response to Christine's email explaining her 401(k) calculations.

Christine had argued in her motion to alter and amend that the district court should have reduced the value of her 401(k) account by the amount that she contributed to the

16

account after the filing date, and she requested a 20% tax-related reduction. She contended that this would reduce her equalization payment to Brian by about $30,000. Brian opposed the postfiling contributions request but agreed with the 20% tax treatment. The district court asked for additional information on the issue and gave Christine until the end of the week to submit evidence proving her claim of a $30,000 difference. The district court stated that it would treat all account values the same and all would be valued on the valuation date.

Christine responded by sending the district court and Brian an email. She attached Trial Exhibit 15, which included account summaries and an explanation of her calculations. Brian requested more time to respond but then missed two deadlines for the response. Brian's late email response, to which Christine objected, claimed the following:

> "If the court were to reduce [the 401(k)] by 20% it would be $473,585. The court would also have to reduce Brian's assets that were purchased with pre-tax dollars and it did not. Brian would incur tax if liquidating Smith/Johnson real estate assets/holdings, Lipizzan Petroleum stock, Next Home Innovators assets, and T.D. Ameritrade, all of which include pre-tax contributions and which would require tax be paid if liquidated. This would be an apples to apples comparison. As proposed by both [parties] in our arguments, the court should either tax treat all assets or none. The court ruled that it would not tax treat any of the accounts."

After additional proceedings and email communications, in November of 2022 the district court denied Christine's motion to reduce the value of her 401(k) as of the valuation date. The order explained that the district court had "reserved the issue" and granted Christine time to submit evidence to support her claim that she had "paid $30,000" into her retirement account since filing for divorce. The district court found that Christine failed to produce reliable documentation upon which the Court could determine the amount:

"After reviewing argument[s] submitted by counsel, the Court finds that Petitioner's 401(k) value on the valuation date (12/31/21) was $591,980.87. Petitioner's exhibit 15 asserts that Mother's post-filing contributions were $19,268.95. Exhibit 15 is not a statement from Mother's 401 K. Petitioner's response asserts that Mother's exhibits clearly show Mother's contributions after filing. The Court finds that Exhibit 15 does not clearly establish Mother's contributions to her 401K post-filing. Reviewing Petitioner's exhibits, the Court finds no statement reflecting Mother's contributions to her 401K through Cardiovascular Consultants. The Court is further confused by the assertion on October 18, 2022, that Mother's contributions were $30,000 after filing. The Court denies Petitioner's request to reduce the value of her 401K by the amount Petitioner contributed post-filing because the Petitioner has failed to submit reliable documentation upon which the Court could determine the amount. Court will treat assets equally. Any contributions made post-filing will not be deducted from the valuation."

Christine suggests that the district court erred in valuing the 401(k) according to the valuation date because K.S.A. 2022 Supp. 23-2801 provides that the filing date controls the issue. But this is incorrect. K.S.A. 2022 Supp. 23-2802(b) controls the valuation date and allows the trial court to choose dates other than the filing date as the valuation date.

Christine also argues that because the district court relied on post-filing emails instead of evidence admitted at trial, the court lacked substantial competent evidence to support its decision. She likewise claims no evidence shows that the division was fair and equitable. This argument is flawed, however, because it suggests that the district court was required to adopt Christine's valuation unless Brian proved it wrong and it invites the panel to reweigh the evidence. Yet the applicable rule simply requires that "values assigned to marital property must be within the range of evidence before the court." *In re Marriage of Schwien*, 17 Kan. App. 2d 498, 509, 839 P.2d 541 (1992). The district court's valuation complied with this requirement.

The district court did not arbitrarily value Christine's 401(k) plan but relied on the evidence submitted by the parties. The district court also appropriately applied the same valuation date that it used to value the rest of the marital property and was not required to consider values before or after that date. See K.S.A. 2022 Supp. 23-2802(b). When substantial evidence supports the trial court's findings, it does not matter that there may have been contrary evidence. This court cannot reweigh the evidence. *Geer*, 309 Kan. at 191.

Brian asserts that the district court's finding that Christine "'failed to submit reliable documentation'" upon which the Court could determine the amount that Christine contributed postfiling was a negative finding against Christine, so she must show "'an arbitrary disregard of undisputed evidence or some extrinsic circumstance such as bias, passion, or prejudice,'" citing *In re Estate of Farr*, 274 Kan. 51, Syl. ¶ 9, 49 P.3d 415 (2002). A negative finding occurs when a district court finds that a party failed to meet its burden of proof. *State v. Douglas*, 309 Kan. 1000, 1002-03, 441 P.3d 1050 (2019). This rule does not fully apply here because Christine did not carry the sole burden to prove the value of the 401(k) account. Still, the district court's finding supports its decision not to consider the alleged change in value and to instead apply the value on the valuation date.

At trial, Christine testified about how she calculated her proposed value. She also explained at trial, and in her posttrial emails, that the account had appreciated by around 60% after the filing date, accounting for 11.1% of the total increase in the account. Within one month after the December 2021 valuation date, the account had lost around $28,000. Christine also testified that unlike Brian, she continuously contributed to the account throughout the underlying proceedings.

Brian did not counter those calculations or contemporaneously object to the district court's initial valuation until he submitted emails responding to Christine's emails, after the district court entered its initial ruling. Christine does not cite authority to support

19

her argument that the district court used an inappropriate procedure for amending its decision, nor does she allege that the decision was final and could not be changed. The court treated both parties the same by permitting them to assert arguments and facts in emails after its decision.

And sufficient evidence supports the district court's valuation. The district court appropriately applied the same valuation date to the 401(k) that it used to value the parties' other marital assets and debts. And although the district court could have considered the post-filing contributions when deciding how to divide this asset, see K.S.A. 2022 Supp. 23-2802(b), the court appropriately found that it lacked sufficient evidence to reduce the value by any amount. Christine's argument thus fails.

*Postfiling Mortgage Payments*

Similarly, Christine challenges the district court's refusal to reduce the value of the marital residence by the amount of her postfiling payments toward the mortgage. She asserts that the court abused its discretion because it did not "carve out her principal pay down after the filing date as her separate asset or set it apart to her based on equity." She relies on *Singhal* as support.

In *Singhal*, the district court ordered the husband to pay temporary maintenance support to cover the wife's expenses, which included a monthly mortgage payment. Later, the district court ordered the husband to pay the balance due on the mortgage. But to account for this financial burden, the court reduced the husband's maintenance payments. And to give him credit for the mortgage payments, the district court excluded the mortgage debt from its property division calculation. The wife appealed, arguing the district court failed to value the debt according to the valuation date. This court denied the argument, finding the district court used the valuation date but also appropriately considered other matters to ensure a fair distribution. The panel affirmed the district

20

court's valuation, finding it would be unfair to require the husband to effectively pay for the same debt twice. *Singhal*, 2009 WL 1692246, at \*4-5.

Comparably, Christine argues that the district court awarded Brian a double benefit at her expense. She was ordered to pay Brian $440 in spousal maintenance for 43 months, which began on October 1, 2020, and Brian was later awarded one half of the principal pay down. So in effect, he received both spousal maintenance and principal pay down for 20 months. Christine thus argues that by negative analogy, *Singhal* shows that the district court should have either excluded her postfiling mortgage payments from the property distribution calculation or awarded the amount of her principal pay down to her.

This argument provides some support for Christine's general claim of unfairness. But unlike the complaint in *Singal*, Christine's argument alleges that the district court ordered Christine to pay two benefits to Brian. She does not allege that the district court ordered her to pay for the same benefit or debt twice.

Brian counters that *In re Marriage of Elfgren and Hendrickson*, No. 126,458, 2024 WL 2789635 (Kan. App. 2024) (unpublished opinion) is more on point. It found an abuse of discretion in awarding the wife the marital home as well as credit for the reduction in the principal for her payments toward the mortgage during the proceedings, because the wife received a double benefit by being granted the house itself and the principal pay down. 2024 WL 2789635, at \*8-9. In her reply brief, Christine distinguishes *Hendrickson* by noting that the district court in *Hendrickson* valued the house according to the valuation date that the wife preferred, so in addition to receiving the full value of the pay down, the wife received the house at the lower value. Here, however, Christine would have received the benefit of the pay down, but Brian would have received the benefit of the increased value of the house.

Still, Christine's argument does not show any legal or factual error. K.S.A. 2022 Supp. 23-2801 does not control the valuation date for property division, so she cannot show that the district court was legally obligated to treat her post-filing mortgage payments as a separate asset. And the decision is not so unreasonable as to warrant relief under our abuse of discretion standard.

*Tax Treatment of Retirement Accounts*

Christine's final challenge to the property division alleges an abuse of discretion based on the district court's decision to not tax treat the retirement accounts. She argues legal and factual error. The crux of her claim is that the district court initially decided to reduce the value of all accounts by 20% to account for future taxes, then later decided not to tax treat any accounts. She claims the district court lacked legal authority to reverse its decision on that matter. And because Brian never opposed her request for tax treatment and did not present any conflicting evidence at trial, he could not raise the issue for the first time after trial, particularly since his claims were not included in the pretrial order. The district court thus erred by entertaining Brian's claims and granting Brian's request for relief.

As we noted earlier, after Christine sent the district court and Brian an email in October 2022 explaining her request to reduce the valuation of her 401(k) plan, she attached Trial Exhibit 15. Brian responded tardily by email in October 2022, claiming:

> "If the court were to reduce [the 401(k)] by 20% it would be $473,585. The court would also have to reduce Brian's assets that were purchased with pre-tax dollars and it did not. Brian would incur tax if liquidating Smith/Johnson real estate assets/holdings, Lipizzan Petroleum stock, Next Home Innovators assets, and T.D. Ameritrade. This would be an apples to apples comparison. As proposed by both [parties] in our arguments, the court should either tax treat all assets or none. The court ruled that it would not tax treat any of the accounts."

22

Although we highly value the pretrial order as a critical tool, see *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 708, 317 P.3d 70 (2014), we do not view this email as Brian's raising a new claim outside the scope of the pretrial order. Cf. *In re Marriage of Waugh and Tugman*, No. 100,937, 2009 WL 3270845, at *5 (Kan. App. 2009) (unpublished opinion) (Because party sought to introduce only new evidence, and not a new claim, the district court did not abuse its discretion by amending the pretrial order and reaching a valuation that differed from a stipulation.).

The pretrial order suggested what the court should do for retirement accounts: "The court should subtract 20% from all retirement accounts to account for income taxes paid upon withdrawal, or the court should consider retirement accounts separate from the other post-tax assets." But Brian's email did not contradict that suggestion; it addressed a different topic (real estate holdings) that fell within the pretrial order's broadly-stated issues of fact and law: "Property valuations," and "Equitable division of the parties' property."

Brian's email noted that both parties had proposed that the court should either tax treat all assets or none. The court initially ruled that it would reduce the value of the retirement accounts where the contributions were made with pre-tax dollars by 20%. However, Brian then asserted that if retirement accounts were discounted, his real estate and business assets should also be discounted for tax impact. The court then decided, when denying Christine's motion to alter or amend, not to tax treat any accounts. We find no abuse of discretion in this procedure. Christine shows no authority supporting her claim that the district court lacked legal authority to revisit its decision on that matter. See e.g., *King v. U.S.D. No. 501*, 63 Kan. App. 2d 758, 768, 539 P.3d 1045 (2023), *rev. denied* 318 Kan. 1087 (2024) (finding no error in the court's deciding an issue at the summary judgment stage and then revisiting its decision after hearing evidence at trial). Generally, a district court can revisit its determinations made throughout trial until a notice of appeal is filed.

23

Christine also raises a substantive challenge to the court's decision, contending that 20% tax treatment was the only fair and equitable choice, citing *In re Marriage of Wood*, No. 122,211, 2020 WL 6685537 (Kan. App. 2020) (unpublished opinion). There, the district court applied a 20% reduction for taxes on retirement accounts, but that issue was not reviewed on appeal. 2020 WL 6685537, at *3. To the contrary, Brian cites two cases in which this court affirmed decisions not to tax treat retirement accounts: *In re Marriage of Lozada*, No. 124,235, 2023 WL 4672108 (Kan. App. 2023) (unpublished opinion) and *In re Marriage of Reynolds*, No. 71,954, 1995 WL 18253286 (Kan. App. 1995) (unpublished opinion). Yet these cases do not help decide the overall issue of whether tax treatment was appropriate or equitable here.

The district court's decision whether to tax treat the accounts falls within its broad discretion. The district court applied the same tax treatment—none—to both parties. That decision is both fair and equitable. We thus find no abuse of discretion.

V.     *Christine does not show error in the district court's order that she pay attorney fees.*

The district court awarded Brian $15,000 in attorney fees related to litigation that it found Christine unreasonably caused. Christine argues this decision is not supported by substantial competent evidence. She does not challenge the district court's authority to award Brian fees, nor does she challenge the reasonableness of the amount of fees assessed. She thus waives or abandons such claims. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 803, 466 P.3d 1207 (2020) (finding issues not briefed waived or abandoned).

The district court awarded Brian attorney fees based on the following "unreasonable conduct" by Christine:

24

"Specifically, Petitioner's actions regarding the personal property of the parties directly violated the agreed temporary order. Petitioner scheduled property pick-up without consulting Respondent and picked A.C.J.'s birthday. Petitioner had no right to dispose of Respondent's personal property or to remove items because of the children e.g. Respondent's 'magazine' collection. [Petitioner] had no right to attempt to sell disputed personal property on Facebook Marketplace. In addition, Petitioner made agreements on issues e.g. filing joint income taxes only to change her mind with no notice to Respondent. Even after Respondent filed a motion and Petitioner was admonished for unilaterally filing her taxes, she did the exact same thing in 2021. Respondent attempted to have the marital residence appraised. Petitioner would not allow the appraiser to appraise the residence. Email communication between the attorneys reflected an agreement to use the county tax assessment value plus 10%. At trial, Petitioner's counsel proposed a different value for the property."

In a family law case, the district court may award attorney fees to either party "as justice and equity require." K.S.A. 23-2715. When, as here, the district court has authority to grant attorney fees, we review the amount awarded under the abuse of discretion standard. *Schmidt v. Trademark, Inc.*, 315 Kan. 196, 208, 506 P.3d 267 (2022).

Chritine argues that the district court did not award Brian attorney fees based on equitable principles but to punish her. She also claims that the district court disregarded the parties' financial needs and ability to pay. She cites *Dunn v. Dunn*, 3 Kan. App. 2d 347, 595 P.2d 349 (1979) and argues that both of these errors establish abuse of discretion. In *Dunn*, this court reversed the trial court's award of $4,500 in attorney fees to a husband, finding an abuse of discretion. *Dunn* held that "one factor that the trial court judge must consider is the need of one party, weighed against the financial ability of the other to pay." 3 Kan. App. 2d 347, Syl. ¶ 3. Christine claims that by awarding Brian $15,000 in attorney fees, the district court ignored her financial circumstances. She also implies that the district court intended to chill litigation by punishing her.

But *Dunn* is distinguishable. Unlike in Dunn, Mother fails to show that her income is substantially less than Father's, and the district court made no comments to dissuade Mother from filing future motions. Instead, the district court found that Christine's "unreasonable conduct generated attorney fees for [Brian] which would not have been necessary absent [Christine's] conduct." The district court also explained that after "considering oral and written arguments of counsel, and being duly advised in the premises, the Court finds that justice and equity demand [Christine] pay $15,000 of [Brian's] attorney fees."

The judge who awarded these fees had overseen this case for more than four years and was well aware of the parties' needs and financial circumstances. Trial courts have broad discretionary authority to determine an award of attorney fees, and appellate courts do not reweigh the testimony or evidence presented to the trial court or reassess witness credibility. And an award will not be set aside on appeal when, as here, it is supported by substantial competent evidence. *In re Marriage of Strieby*, 45 Kan. App. 2d 953, 973, 255 P.3d 34 (2011).

VI.     *Brian is not entitled to appellate attorney fees.*

Brian seeks appellate attorney fees and costs, alleging Christine's acquiescence in the trial court judgment from which she appeals, her extreme delays at the appellate level and her bad faith behavior at the trial court level, coupled with the trial court's determination of Brian's need and Christine's ability to pay support his request for attorney fees on appeal.

Having reviewed these factors, and the record as a whole, we decline to award Brian attorney fees on appeal.

Affirmed.

* * *

SCHROEDER, J., concurring: I concur in the result because I believe the majority's analysis is correct on the merits, including the denial of Brian's request for attorney fees on appeal. However, I agree with Brian's argument that Christine acquiesced to the district court's judgment by selling the marital residence; therefore, I would dismiss the appeal. In my view, the residence was a major asset of the marital estate and is part and parcel to all of the property that was equitably divided; thus, I do not view it as a severable matter. Christine accepted the benefits of the judgment by selling the house for far more than it was valued in the marital estate and reaped the benefit. She should not be allowed to take an inconsistent position on appeal by now arguing the remaining assets were improperly divided. See *McDaniel v. Jones*, 235 Kan. 93, 103, 679 P.2d 682 (1984) ("'A party who enforces payment or satisfaction of a judgment or decree in his [or her] favor, by suing out execution or otherwise, generally waives his [or her] right to bring or prosecute an appeal or writ of error.'"); *In re Marriage of Boorigie*, No. 127,951, 2025 WL 573863, at *3 (Kan. App. 2025) (unpublished opinion) (dismissing husband's appeal where he withdrew funds from brokerage account awarded under judgment); *Cybertron International, Inc. v. Capps*, No. 122,439, 2022 WL 128842, at *7-8 (Kan. App. 2022) (unpublished opinion) (dismissing Cybertron's cross-appeal of amount awarded where it had initiated garnishment actions against Capps for full amount of award).